**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5182-15T1


RON and ESTHER KRUKOWSKI,

    Plaintiffs-Respondents,

v.

GRACE S. WONG,

    Defendant-Appellant.

_____

Submitted September 19, 2017 — Decided September 28, 2017

Before Judges Yannotti and Mawla.

On appeal from Superior Court of New Jersey,
Law Division, Special Civil Part, Monmouth
County, Docket No. SC-1382-16.

Grace S. Wong, appellant pro se.

Respondents have not filed a brief.

PER CURIAM

    Defendant Grace S. Wong appeals from a judgment entered by

the Law Division on June 16, 2016, awarding plaintiffs Ron and

Esther Krukowski $3900, plus court costs in the amount of $42. We

affirm.

This appeal arises from the following facts. Plaintiffs entered into a lease for certain premises on Avalon Lane in Manalapan for a term beginning on April 6, 2015, and ending on July 5, 2015, at a monthly rent of $3900. The lease identified Trinity Referral Company, LLC (Trinity) as the landlord and "Esther Krukowski and family" as tenants. Among other things, the lease stated that the tenant must pay a security deposit in the amount of $3900.

The lease also stated that the landlord must deposit the security deposit in an interest-bearing or money market account within thirty days after its receipt. The section of the lease pertaining to the security deposit stated in pertinent part that:

> The Landlord shall inspect the Property after the Tenant vacates at the end of the Term. Within 30 days of the termination of this Lease, the Landlord shall return the Security Deposit plus the undistributed interest to the Tenant, less any charges expended by the Landlord for damages to the Property resulting from the Tenant's occupancy. The interest and deductions shall be itemized in a statement by the Landlord, and shall be forwarded to the Tenant with the balance of the Security Deposit by personal delivery, registered or certified mail.

> If the Landlord sells or transfers the Property during the Term of this Lease, the Landlord will transfer the Security Deposit plus the undistributed interest to the new owner. Landlord shall notify the Tenant of the sale and transfer, as well as the name and address of the new owner. The notice shall be

given by registered or certified mail within five days after conveyance of title. After acquisition of the Property, the new owner shall have all responsibility regarding the Security Deposit, and the Landlord shall have no further responsibility.

In May 2016, plaintiffs filed a complaint against defendant in the Small Claims Division of the Special Civil Part, seeking damages in the amount of $4550. Plaintiffs alleged defendant had wrongfully withheld their $3900 security deposit. They also alleged that defendant had forced them to vacate the premises before the end of the lease term. They sought $645, which represented a pro-rata portion of the rent they had paid for the month ending on October 5, 2015.

On June 16, 2016, the judge conducted a trial in the matter, sitting without a jury. At the trial, Ms. Krukowski testified that a fire damaged plaintiffs' home. She said that after the fire, the family moved to a hotel but they required temporary housing until the home was rebuilt. Plaintiffs leased the residence on Avalon Lane in Manalapan, at the suggestion of their insurer, State Farm, and its agent, Churchill Corporate Services (Churchill).

The initial lease term was for three months, from April 6, 2015, to July 5, 2015, after which plaintiffs could remain in the house on a month-to-month basis. Mr. Krukowski stated that plaintiffs and their children moved into the house on April 6,

2015, and they later extended the term of the lease to October 5, 2015. Ms. Krukowski said plaintiffs were informed the property had been sold and the closing would take place sometime in October 2015. She stated that defendant offered to allow plaintiffs to remain in the house until November 5, 2015, but plaintiffs agreed to vacate the premises by October 5, 2015.

Mr. Krukowski further testified that in September 2015, plaintiffs began to receive e-mails stating that contractors would be coming to the house to fix certain tiles. The contractors performed the work on September 27, 2015. According to Mr. Krukowski, on September 29, 2015, plaintiffs received a text-message stating that they had to vacate the premises by the following day. Mr. Krukowski said the notice was a surprise. He further testified that on September 30, 2015, plaintiffs received numerous text-messages informing them they had to get out of the house as soon as possible.

Plaintiffs vacated the premises on September 30, 2015, and expected that their security deposit would be returned to them within thirty days. However, plaintiffs received a letter from defendant's attorney, which stated that defendant had no obligation to return the security deposit. He said the property had been sold and plaintiffs should seek the monies from the new owner.

A-5182-15T1

Counsel also stated that plaintiffs were not entitled to the return of any monies because the cost of repairing the damage plaintiffs caused to the property exceeded the amount of the security deposit. In his letter, defendant's attorney referenced an "extensive number of broken tiles" in the kitchen and bathrooms, the condition of the carpets, and the debris left behind when plaintiffs vacated the premises. Mr. Krukowski testified that he did not understand how his family could have damaged the tiles.

Ms. Krukowski stated that plaintiffs were aware when they signed the lease that the property was in foreclosure. They understood they would have to move out at some time. She explained that State Farm gave money for the rent to Churchill, and Churchill tendered the rental payments to defendant.

Ms. Krukowski acknowledged that the lease identified Trinity as the landlord, but said all of her dealings with regard to the property were with defendant. She said she was defendant's tenant. Ms. Krukowski also stated that when she had the garbage disposal fixed, she called defendant "as the owner" to ask her if she would contribute toward the cost.

Ms. Krukowski stated that when defendant had to show the house to prospective buyers, defendant communicated with her by text message. Defendant was not acting as an agent. Ms. Krukowski also said that defendant was identified as the owner of the house

on the water bill. In addition, Ms. Krukowski's research identified defendant as the owner of 391 Franklin Turnpike.

Ms. Krukowski further testified that she did not believe the new owner was responsible for return of the security deposit because plaintiffs had moved out before the closing and they did not rent the premises from the new owner. Ms. Krukowski stated that plaintiffs vacated the house at around 1:00 or 2:00 p.m. and thereafter, none of their possessions remained in the house.

Defendant's attorney then moved pursuant to Rule 4:37-2(b) for involuntary dismissal of the complaint. Counsel asserted that defendant was not the owner of the property and she was not the company that leased the property to plaintiffs. Counsel stated that defendant did not hold the security deposit and the lease provided that upon the sale of the property, the security deposit would be turned over to the new owner. He also stated that the security deposit was actually Churchill's money and Churchill was the real party in interest. The judge denied the motion.

Defendant then testified that 391 Franklin Turnpike was the owner of the house. Defendant and her husband are the owners of 391 Franklin Turnpike. She said that Trinity is the management company that "handles" 391 Franklin Turnpike. Defendant stated that she is not an owner of Trinity, and she is "the only contact person" for 391 Franklin Turnpike.

6                                          A-5182-15T1

Defendant claimed that Trinity received plaintiffs' security deposit, which was in the form of a check payable to Trinity. Defendant stated that she did not take the money and put it in her name. She said, it was "always Trinity." She claimed the money was deposited for Trinity by "one of the persons who goes to the bank" on Trinity's behalf. She admitted, however, that sometimes she is one of the persons who handles the banking for Trinity.

Defendant also testified that before plaintiffs moved into the house, it "was in perfect condition," and claimed there were no broken tiles in the home when plaintiffs moved in. She explained that plaintiffs had agreed different selling agents could show the house to prospective purchasers. Defendant claimed she was told the house was a "mess."

In addition, defendant stated that plaintiffs had damaged the house "tremendously." She said she had an estimate that it would cost $12,000 to repair the damaged tiles in the house. The carpet also had been damaged "badly." Defendant told plaintiffs that because of the damage they caused, the security deposit would not be returned to them.

The judge then placed his decision on the record. He found that plaintiffs' testimony established that defendant was the landlord because she was the person primarily responsible for the property. The judge did not find defendant's testimony to be

credible. The judge also did not accept defendant's assertion that plaintiffs were responsible for the damage to the property. The judge found that the damage resulted from its prior use as a rental property.

The judge determined that defendant was the landlord of the leased premises and she was legally responsible for return of plaintiffs' security deposit. The judge did not double the amount of the deposit that had been wrongfully withheld, as permitted by N.J.S.A. 46:8-21.1, because the judge believed defendant had attempted to comply with the security deposit law.

The judge also rejected plaintiffs' claim for the return of the rent plaintiffs paid for the period from September 30, 2015, when they vacated the premises, to October 5, 2015, the end of the lease term. The judge awarded plaintiffs damages of $3900 for the return of the security deposit, and court costs of $42. Thereafter, the judge entered a final judgment for plaintiffs in accordance with his findings. This appeal followed.

On appeal, defendant argues: (1) the trial court erred by finding she is responsible for the return of the security deposit because she is not the landlord of the property; and (2) the new owner of the property is legally obligated to return the security deposit to plaintiffs.

A-5182-15T1

Appellate review of a final determination of a trial judge sitting in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). We will not disturb the judge's findings of fact and legal conclusions unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" In re Trust Created by Agreement Dated Dec. 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Deference to the trial court's findings "is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citing In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

The Security Deposit Act, N.J.S.A. 46:8-19 to -26, provides in pertinent part that within thirty days after the termination of a tenant's lease, the owner or lessee of the premises shall return to the tenant the security deposit, plus any interest or earnings accumulated thereon, less any charges expended in accordance with a contract, lease, or agreement. N.J.S.A. 46:8-21.1.

As noted, defendant argues that Trinity was the landlord of the premises leased to plaintiffs. She asserts that she never

claimed to be the person who owns, or who purports to own, or exercise control of the premises. There is, however, sufficient credible evidence in the record to support the trial judge's factual finding that defendant was the landlord of the property leased to plaintiffs.

In his decision, the judge noted that defendant had conceded she and her husband owned the property through 391 Franklin Turnpike. The lease identifies Trinity as the landlord. Although defendant testified that she had nothing to do with Trinity, the judge found defendant's testimony entirely lacking in credibility.

The judge noted that the evidence showed that defendant received plaintiffs' security deposit and she was the person in charge of dealing with those monies. The monies also had been deposited in Trinity's bank account, and defendant conceded she is one of the persons who handles the banking for Trinity. We conclude that the record supports the judge's finding that defendant was legally obligated under N.J.S.A. 46:8-21.1 to return the security deposit to plaintiffs upon the end of the tenancy.

The record also supports the judge's finding that defendant failed to establish any credible basis for a reduction in the security deposit as a result of the alleged damage caused by plaintiffs. The judge noted that when the home was sold, the home inspection report indicated that certain repairs were required.

10

The judge found, however, that plaintiffs had credibly testified that they did not cause the damage that defendant attributed to them. The judge pointed out that plaintiffs had only been in the home for a short period of time, and before plaintiffs moved in, the home had been rented to other persons.

Defendant further argues that she is not legally required to return the security deposit to plaintiffs. She argues that this obligation falls upon the new owner of the property. N.J.S.A. 46:8-20 provides in pertinent part that an owner or lessee of property leased who has received a security deposit from a tenant, shall, upon conveying the property or assigning it to another in a mortgage foreclosure action, turn over the deposit to the grantee, assignee, or purchaser at the foreclosure sale at the time of the delivery of the deed or assignment or within five days thereafter.

The statute further provides that notwithstanding any other law to the contrary, it shall then be the "duty and obligation of the grantee, assignee or purchaser to obtain from the grantor who is the owner or lessee at the time of the transfer, conveyance or purchase any and all security deposits, plus accrued interest on the deposits, that the owner or lessee received from a tenant[.]" Ibid. In addition, N.J.S.A. 46:8-21 provides:

Any owner or lessee turning over to his or its grantee, assignee, or to a purchaser of the leased premises at a foreclosure sale the amount of such security deposit, plus the tenant's portion of the interest or earnings accumulated thereon, is hereby relieved of and from liability to the tenant or licensee for the repayment thereof. Whether or not the deposit plus accumulated interest are so transferred, the grantee, assignee or purchaser of the leased premises is nevertheless responsible for . . . return of the security deposit, plus any accumulated earnings or interest thereon, to the tenant or licensee, in accordance with the terms of the contract, lease, or agreement unless he or it shall thereafter and before the expiration of the term of the tenant's lease or licensee's agreement, transfer such security deposit to another . . . .

[N.J.S.A. 46:8-21.]

Here, the evidence shows that the property in question was in foreclosure and it was sold to a third-party. As plaintiffs explained, they had extended their lease until October 5, 2015, but on September 29, 2015, defendant demanded that they vacate the premises the following day. Mr. Krukowski testified that plaintiffs vacated the premises on September 30, 2015, and all of their personal belongings were removed on that day, which was the date of the closing.

Defendant conceded that she did not transfer plaintiffs' security deposit to the new owner. Rather, she claimed that the purchasers used the security deposit in negotiations to lower the

12

overall purchase price of the property. The judge found defendant's testimony to be entirely lacking in credibility. Moreover, defendant provided no documentation to show that the deposit had been transferred to the new owner by means of a reduction of the purchase price.

Furthermore, there is no evidence that defendant closed on the sale of the property before plaintiffs vacated the property on September 30, 2015. Ms. Krukowski testified that plaintiffs vacated the property prior to the closing and transfer of title. She also testified that plaintiffs did not have a landlord-tenant relationship with the new owner.

We conclude that there is sufficient credible evidence in the record to support the judge's determination that defendant was the party obligated by N.J.S.A. 46:8-21.1 to return the security deposit to plaintiffs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5182-15T1